OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition containing five charges of professional misconduct. After a pretrial conference, a hearing limited to the issue of mitigation with respect to charges one through four, and a full hearing with respect to charge five, the Special Referee sustained all five charges. The Grievance Committee now moves to confirm the Special Referee’s report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent cross-moved to dismiss charges one through five, and/or confirm only those portions of the report addressing mitigating factors, such as, the respondent’s reputation for integrity and the fact that he was acting in the client’s best interest inasmuch as the client benefitted financially from the underlying transaction.
Charge one alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to maintain and preserve funds entrusted to him in escrow pursuant to an order of the United States Bankruptcy Court for the Eastern District of New York (hereinafter the Bankruptcy Court) dated January 26, 2000, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
*260 In or about 1999, the respondent represented Dr. Josephine English and a number of corporations of which she was the principal, including debtor English Sheppard Realty Corp. (hereinafter ESR). On January 11, 1999, the respondent, on behalf of ESR, filed a voluntary chapter 11 petition in the Bankruptcy Court. ESR’s sole asset was a residential apartment building located at 1325 Union Street in Brooklyn (hereinafter 1325 Union Street).
The Bankruptcy Court did not issue a written order of retention authorizing the respondent to represent ESR in the ESR bankruptcy proceeding.
By letter dated October 10, 1999, the respondent advised Dr. English, inter alia, that he had received payments in the amount of $55,413.92 for legal services rendered, with $30,000 representing retainer deposits pursuant to specific retainer agreements. The letter states, in relevant part, that
“[biased on the foregoing, the unallocated amount of $25,413.92 is allocated as follows . . . Payment on account: English Sheppard Realty Corp. Chapter 11 case: $5,000 . . . Given the above, payments as follows are requested to be made on account of the following legal matters . . . $7,500, on the account, for legal work inconnection with the English Sheppard Realty Corp. Chapter 11 case.”
Dr. English signed the letter dated October 10, 1999, acknowledging that “[t]he foregoing payments are agreed to and accepted by me.”
By order dated January 26, 2000, the Bankruptcy Court (Duberstein, J.) confirmed and authorized the sale of 1325 Union Street to NMF Properties, LLC, for the sum of $670,000. The order provided, in relevant part, that
“8. At the closing on the sale of 1325 Union Street, the Buyer is authorized and directed to pay $39,617.21 plus $85.32 for each day after January 18, 2000, subject to confirmation at closing, to Greenpoint in the form of a certified bank check or attorney check in satisfaction of said secured debt. The remaining portion of the sale proceeds shall be paid to Debtor by payment to Debtor’s counsel to be held in escrow pending confirmation of Debtor’s Chapter 11 Plan of Reorganization . . . and distribution pursuant to Court Order.
*261 “9. Buyer is directed to pay Debtor’s counsel and Debtor’s counsel is authorized and directed to hold in escrow one hundred fifty (150%) percent of all monies computed to be due for New York City Real Property Transfer Taxes (‘NYC transfer taxes’) except that said NYC transfer taxes shall be due and payable to the City of New York, in the event that Debtor’s Chapter 11 Plan is confirmed.” (Emphasis added.)
The closing of 1325 Union Street occurred on January 28, 2000. At the closing, the respondent received from the buyer the sum of $245,243.59 by two checks: a check in the amount of $218,862.34, representing the net proceeds, and a check in the amount of $26,381.25, representing 150% of the sum computed to be due for NYC transfer taxes.
On January 31, 2000, the respondent deposited the check for $245,243.59 into his attorney trust account at Chase Bank, entitled “Phillip D. Miller Esq. IOLA Account.” The closing balance on the respondent’s IOLA account as of January 31, 2000 was $397,035.71.
By letter dated February 1, 2000, the respondent advised Dr. English that “[pjayments received to date for services rendered on the 1325 Union St. Chapter 11 bankruptcy is $27,500. This is to confirm your authorization to pay over to me an additional $5,000 on account for services rendered in connection with this bankruptcy case.” Dr. English signed the letter on February 3, 2000, acknowledging that “[t]he foregoing payments are agreed to and accepted by me.”
By order dated May 1, 2001, Judge Duberstein authorized, nunc pro tunc, the substitution and retention of Windels Marx Lane & Mittendorf, LLP (hereinafter Windels Marx), as counsel to debtor ESR in place of the respondent, and relieved the respondent of his duties as counsel for debtor ESR.
By order dated October 9, 2001, the Bankruptcy Court directed, inter alia, the respondent to turn over to the debtor’s attorneys and account for the proceeds being held in escrow by him. The respondent issued check No. 1408 in the amount of $35,447.42 to Charles Simpson, Esq., of Windels Marx, representing the balance from the proceeds remaining in the respondent’s attorney trust account.
Debtor ESR’s reorganization plan was confirmed on September 24, 2002.
Between January 31, 2000, the date the respondent deposited the proceeds of the sale of 1325 Union Street into his attorney *262 trust account, and December 20, 2001, the date check No. 1408 was posted, the respondent did not receive authorization from the Bankruptcy Court to disburse, withdraw, or release funds related to the proceeds of the 1325 Union Street sale, as determined by: (1) an oral decision of the Bankruptcy Court (Eisenberg, J.) on May 16, 2006 in the Matter of English Sheppard Realty, Debtor, (2) an order of the Bankruptcy Court (Eisenberg, J.) dated June 19, 2006 in the same matter, and (3) an order of United States District Court of the Eastern District of New York (Seybert, J.) dated September 19, 2007.
Charge two alleges that the respondent failed to maintain and preserve funds entrusted to him as fiduciary by failing to maintain and preserve funds entrusted to him in escrow pursuant to an order of the Bankruptcy Court dated January 26, 2000, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
The respondent, as fiduciary, failed to maintain and preserve the proceeds of the sale of 1325 Union Street ($245,243.59) in his attorney trust account between January 31, 2000 and November 30, 2001, as evidenced by the following balances in the respondent’s attorney trust account:
February 28, 2001 $196,567.45
March 31, 2001 $120,470.32
April 30, 2001 $119,934.12
May 31, 2001 $79,041.34
June 30, 2001 $43,866.56
July 31, 2001 $38,866.56
August 30, 2001 ■ $38,866.56
September 30, 2001 $38,866.56
October 31, 2001 $38,866.56
November 30, 2001 $38,866.56
Charge three alleges that the respondent engaged in conduct prejudicial to the administration of justice by withdrawing legal fees related to the debtor ESR from his attorney trust account without court authorization, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
The respondent did not have court authorization to withdraw legal fees related to the debtor ESR from his attorney trust account, as determined by the oral decision of Bankruptcy Court Judge Dorothy Eisenberg on May 16, 2006, the order of Bankruptcy Court Judge Dorothy Eisenberg dated June 19, *263 2006, and the order of United States District Court Judge Joanna Seybert dated September 19, 2007.
Charge four alleges that the respondent misappropriated client funds, in that he withdrew legal fees related to the ESR bankruptcy proceeding from his attorney trust account without court authorization, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), based on the factual specifications alleged above.
Charge five alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law in that he obtained from his client a durable irrevocable power of attorney, coupled with an interest, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
By an “Attorney Authorization” acknowledged on March 19, 1999, Dr. English granted to the respondent “a durable, irrevocable power of attorney, coupled with an interest” providing the respondent with “full power and authority” to act for Dr. English or an entity owned or controlled by her with respect to real estate transactions, bond, share and commodity transactions, banking transactions, business operating transactions, estate transactions, and tax matters.
Based on the doctrine of collateral estoppel, the Special Referee properly sustained charges one through four. The Special Referee also properly sustained charge five based on the credible evidence. Accordingly, the motion to confirm should be granted and the cross motion to dismiss should be denied.
In determining the appropriate measure of discipline to impose, the Grievance Committee notes that the respondent previously received a letter of caution dated November 14, 1980, warning him to handle funds placed in his escrow account in accordance with the Code of Professional Responsibility and the Rules of the Court. The 1980 complaint involved allegations that the respondent placed escrow funds in his father’s account, failed to remit the interest accrued to his client, and deducted his fee from these funds without the client’s consent.
By way of mitigation, as noted by the Special Referee in his report, the respondent’s conduct substantially benefitted his client and brought in $3 million to the bankrupt estate, a fact also noted by the United States Court of Appeals for the Second Circuit in its order dated April 28, 2009, affirming in part and remanding in part, the Bankruptcy Court’s order (see Miller v Simpson, 325 Fed Appx 25 [2009]). Notwithstanding this fact, *264 the respondent’s serious breaches of his fiduciary obligations to the Bankruptcy Court cannot be excused or overlooked. The respondent clearly acted in violation of the order of the Bankruptcy Court and acted without court authorization. While the attorney authorization granting the respondent an “irrevocable power of attorney, coupled with an interest” was improper, there is no evidence that the respondent exercised his authority in an improper manner.
Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of six months.
Prudenti, EJ., Rivera, Skelos, Fisher and Santucci, JJ., concur.
Ordered that the petitioner’s motion to confirm the Special Referee’s report is granted, the respondent’s cross motion to confirm in part is granted, and the respondent’s cross motion to dismiss all charges is denied; and it is further,
Ordered that the respondent, Phillip D. Miller, admitted as Phillip Douglas Miller, is suspended from the practice of law for a period of six months, commencing August 6, 2010, and continuing until further order of this Court, with leave to the respondent to apply for reinstatement upon the expiration of said period, upon furnishing satisfactory proof that during the said period he (a) refrained from practicing or attempting to practice law, (b) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (c) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (d) otherwise properly conducted himself; and it is further,
Ordered that the respondent, Phillip D. Miller, admitted as Phillip Douglas Miller, shall promptly comply with this Court’s rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Phillip D. Miller, admitted as Phillip Douglas Miller, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding *265 himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Phillip D. Miller, admitted as Phillip Douglas Miller, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).